*428 Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered January 25, 2012, which granted so much of defendant Rigby’s motion to dismiss as sought dismissal of plaintiffs Racketeer Influenced and Corrupt Organizations (RICO) claims, and denied so much of Rigby’s motion as sought to dismiss the complaint for lack of personal jurisdiction and forum non conveniens, or, in the alternative, to dismiss the common-law fraud claims; order, same court, Justice, and date of entry, which granted defendant Keith Park Solicitors’ (KPS) motion to dismiss the complaint as against them for lack of personal jurisdiction; order, same court and Justice, entered January 26, 2012, which granted defendant JST Lawyers’ (JST) motion to dismiss the complaint as against them for lack of personal jurisdiction; and order, same court and Justice, entered January 26, 2012, which, to the extent appealed from, denied plaintiffs’ motion for a default judgment against certain corporate defendants, unanimously affirmed, without costs.
The complaint sufficiently alleges jurisdiction over Rigby under CPLR 302 (a) (2) insofar as the complaint pleads that Rigby was a part of a conspiracy involving the commission of several overt tortious acts in New York (see Best Cellars Inc. v Grape Finds at Dupont, Inc., 90 F Supp 2d 431, 446 [SD NY 2000] [for purposes of personal jurisdiction, “(t)he requisite relationship between the defendant and its New York co-conspirators is established by a showing that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant” (internal quotation marks omitted)]; Cleft of the Rock Found. v Wilson, 992 F Supp 574, 582-583 [ED NY 1998]). Specifically, the complaint, the allegations of which on a motion to dismiss we must deem to be true (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]), pleads that defendants Montague Morgan Slade LTD (MMS), albeit through a virtual office, predominantly existed in New York and committed the torts underpinning the conspiracy there. The complaint further pleads that Rigby, to further the conspiracy and to dissuade plaintiffs from taking any action against the defendants, communicated with the plaintiffs, telling them that their investments were safe and that redemptions would soon be paid, and reassured plaintiffs that he was in communication with MMS’s *429 New York office. While the complaint alleges that Rigby was acting under the control and at the behest of MMS and the co-conspirators, rather than directing MMS to commit tortious acts in New York, jurisdiction is nonetheless established since the complaint alleges that Rigby was aware of the torts being committed by MMS and other defendants in New York (Dixon v Mack, 507 F Supp 345, 351-352 [SD NY 1980] [last prong of the test set out in Best Cellars Inc. (90 F Supp 2d at 446) is satisfied when it is alleged that the out-of-state co-conspirator has knowledge of the tortious acts being perpetrated in New York]). Here, the existence of the virtual office in New York creates sufficient “minimum contacts” with the State such that assertion of jurisdiction over Rigby does not violate “traditional notions of fair play and substantial justice” (International Shoe Co. v Washington, 326 US 310, 316 [1945] [internal quotation marks omitted]; Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 187 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997]). We also note that insofar as plaintiffs pleaded that Rigby, for purposes of furthering the fraud of his co-conspirators, repeatedly reassured plaintiffs that he was communicating with MMS’s New York office, he “[b]y joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York . . . purposely [availed himself] of the privilege of conducting activities within [New York]” (Cleft of the Rock, 992 F Supp at 585 [second alteration in original and internal quotation marks omitted]). Accordingly, he should not be surprised or heard to complain about being sued here.
After considering the relevant factors (see Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 478-479 [1984], cert denied 469 US 1108 [1985]), the court providently exercised its discretion in declining to dismiss the action against Rigby on forum non conveniens grounds (see CPLR 327 [a]; Pahlavi, 62 NY2d at 479). We note that defendants MMS, Montague Morgan Slade Absolute Performance Fund PLC, Montague Morgan Slade Highly Diversified Fund PLC, and Montague Morgan Slade 1095 Fund PLC have stipulated to jurisdiction and venue in New York. Further, the motion court declined to dismiss the action as asserted against Rigby’s co-conspirators on forum non conveniens grounds, based on the fact that this is a multijurisdictional action with no single convenient forum amenable to all the parties.
The complaint sufficiently alleges a claim for fraud against Rigby based on the various statements concerning the redemptions of plaintiffs’ investments (see Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]). The allega *430 tions that Rigby had told one of the plaintiff investors that he was communicating with the New York office to resolve an issue concerning the contract notes, and had made references to operations in that office, while a New York office did not actually exist, permit a reasonable inference that he knew the statements related to the investment redemptions were false (see Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492-493 [2008]). Further, the complaint sufficiently alleges that the statements caused plaintiff to delay seeking redemption and initiating legal proceedings, thereby permitting defendants to funnel monies to themselves in the interim.
Plaintiffs also stated a claim for fraud against Rigby based on the false statements concerning the Wall Street office, the amount of funds under MMS’s management, the MMS Funds’ past performance, the investment of the monies, the guaranteed returns, and the valuations of the investments. Although the complaint does not allege that Rigby had made these misrepresentations, the allegations support a claim for fraud against his co-conspirators (see Eurycleia Partners, 12 NY3d at 559), and Rigby can be connected to the false statements, given the allegations of a conspiracy (see Brackett v Griswold, 112 NY 454, 466-467 [1889]; SRW Assoc. v Bellport Beach Prop. Owners, 129 AD2d 328, 332-333 [2d Dept 1987]).
The court properly dismissed plaintiffs’ civil RICO claims (18 USC § 1962) as barred by the Private Securities Litigation Reform Act of 1995 (PSLRA) (18 USC § 1964 [c], as added by Pub L 104-67, tit I, § 107, 109 US Stat 737; see MLSMK Inv. Co. v JP Morgan Chase & Co., 651 F3d 268, 273-274 [2d Cir 2011]). Contrary to plaintiffs’ contention, the PSLRA also bars the RICO claims insofar as they are predicated on the acts of money laundering and unlawful money transfers, as such alleged acts were part of the same fraudulent scheme (see Seippel v Jenkens & Gilchrist, P.C., 341 F Supp 2d 363, 373-374 [SD NY 2004]; Gilmore v Gilmore, 2011 WL 3874880, *6, 2011 US Dist LEXIS 99441, *17 [SD NY, Sept. 1, 2011, No. 09 Civ 6230 (WHP)], affd 2012 WL 5935341, 2012 US App LEXIS 24403 [2d Cir, Nov. 28, 2012, No. 11-4091-CV]).
The court properly dismissed the action as asserted against defendants KPS and JST for lack of personal jurisdiction. The allegations that Rigby had used the law firms’ letterheads and email addresses to communicate with plaintiffs are insufficient to show that the firms had control over Rigby in the matter, or that Rigby had acted with the firms’ knowledge and consent (see generally Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]; Morgan v A Better Chance, Inc., 70 AD3d 481, 482 [1st *431 Dept 2010]). Nor does MMS’s unilateral wiring of a small amount of money to JST’s account sufficiently demonstrate knowledge or consent of Rigby’s alleged unlawful acts. Plaintiffs’ assertion that other individuals from KPS and JST had communicated with plaintiffs is unavailing, as plaintiffs failed to allege that any JST or KPS lawyer, aside from Rigby, had communicated with plaintiffs about MMS. Further, there is no indication that any communication was made on behalf of the firms, independent of Rigby, or with the firms’ knowledge of the fraud.
Based on the allegations in the complaint, it is unclear as to whether jurisdiction could be exercised over the alleged defaulting parties so as to enable the court to grant a default judgment (see Royal Zenith Corp. v Continental Ins. Co., 63 NY2d 975, 977 [1984]; Bleier v Koegler, 28 AD2d 835, 836 [1st Dept 1967]).
We have reviewed the appealing parties’ remaining contentions for affirmative relief and find them unavailing. Concur— Friedman, J.P., Sweeny, Moskowitz, Freedman and Roman, JJ.